Michael F. Thomson (#9707)
Peggy Hunt (#6060)
Nathan S. Seim (# 12654)
John J. Wiest (#15767)
DORSEY & WHITNEY LLP
111 South Main Street, 21st Floor
Salt Lake City, UT 84111-2176
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: thomson.michael@dorsey.com
       hunt.peggy@dorsey.com
       seim.nathan@dorsey.com

*Attorneys for Michael F. Thomson, Chapter 7 Trustee*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH**

| In re:<br><br>COMMUNITY TRANSLATOR NETWORK LLC,<br><br>Debtor. | Bankr. Case No. 15-31245<br><br>Chapter 7<br><br>The Honorable William T. Thurman |
|---|---|

**MOTION TO APPROVE ASSET PURCHASE AGREEMENT (K227CP)**

Pursuant to 11 U.S.C. § 363(b) and (f), as well as Federal Rule of Bankruptcy Procedure 6004, Michael F. Thomson, the duly appointed Chapter 7 trustee (the "Trustee" or "Seller") for the bankruptcy estate Community Translator Network LLC (the "Debtor"), by and through counsel, hereby moves this Court for entry of an Order approving the Asset Purchase Agreement between the Trustee and Mountain Community Translator, LLC (the "Buyer") in accordance with and pursuant to the Asset Purchase Agreement (the "APA") attached hereto as **Exhibit 1**, free and clear of all interests, with valid interests (if any) in such property attaching to the net

sale proceeds pursuant to 11 U.S.C. §363(b), (f) and (m), and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure. In support hereof, the Trustee states as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

*General*

4. On December 1, 2015, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

5. On June 23, 2017, an order converting this case to a case under Chapter 7 of the Bankruptcy Code was entered on the Court's docket.

6. On June 20, 2017, the Trustee was appointed the interim Chapter 7 trustee for the Debtor's bankruptcy estate, and he now serves as the permanent trustee.

7. On September 15, 2017, the Federal Communications Commission (the "FCC") granted an involuntary assignment of authorization, BAPFT-20170725ABM, of a Construction Permit for FM Translator Station K227CP (the "Construction Permit"), Cheyenne, WY (Facility No. 143430) (the "Facility") from Community Translator Network, LLC – Debtor-in-Possession to the Seller.

8. On October 4, 2017, the Trustee filed his *Application of Michael F. Thomson, Chapter 7 Trustee, for Entry of Order Authorizing the Employment of Media Services Group,*

*Inc. as Broker* [Docket No. 329] (the "Application") seeking authority to employ Media Services Group, Inc. ("MSG") as broker for the sale of the bankruptcy estate's interest in certain radio translator construction permits and related assets, including the bankruptcy estate's interest in the Construction Permit and the Facility's assets (collectively, the "Property").

9. On October 13, 2017, the Court entered its *Order Granting Application of Michael F. Thomson, Chapter 7 Trustee, for Entry of Order Authorizing the Employment of Media Services Group, Inc. as Broker* [Docket No. 336] (the "Order"). The Order authorized the employment of MSG and authorized the Trustee to compensate MSG no more than five percent (5%) of the sales price of the Property with said compensation being paid out of the proceeds of the sale of the Property.

10. MSG marketed the Property.

11. MSG received an offer from the Buyer to purchase the Property for $10,000.00 (the "Purchase Price").

12. The Trustee and the Buyer thereafter negotiated the terms of the APA, pursuant to which the Seller will sell the Facility's assets and assign the Construction Permit for the Facility to the Buyer for $10,000.00 pursuant on the terms and conditions specified in the APA.

*The Sale of the Property Free and Clear of Purported Liens and Encumbrances*

13. There are no known liens on the Property.

14. As discussed in further detail below, the Trustee proposes to the sell the Property free and clear of interests pursuant to 11 U.S.C. § 363(f), with any liens, encumbrances, or other interests that may be raised in conjunction with this Motion, if any, attaching to the proceeds of the sale, after the deduction of the costs of sale, including MSG's commission, outstanding taxes

3

and assessments, and any costs that the bankruptcy estate has incurred in relation to the Property that are allowable under 11 U.S.C. § 506(c) (the "Net Sale Proceeds").

15. In the meantime, the Trustee submits that each of the holders of any liens, encumbrances, or other interests that may be raised are adequately protected by the proposed sale inasmuch as such interests will attach to the Net Sale Proceeds.

## RELIEF REQUESTED

16. By this Motion, the Trustee seeks the entry of an Order approving the sale of the Property, free and clear of interests, with valid interests in the Property, if any, attaching to the Net Sale Proceeds.

## APPLICABLE AUTHORITY

*The Sale of the Property Out of the Ordinary Course of Business Is Warranted*

17. The Bankruptcy Code provides that the "trustee, after notice and a hearing, may use, sell, lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §(b)(1).

18. In order to approve a sale of a debtor's assets outside the ordinary course of business, the Trustee must show that:

> a. a sound business reason exists for the sale;
>
> a. there has been adequate and reasonable notice to interested parties, including full disclosure of the sale terms and the debtor's relationship with the buyer;
>
> b. the sale price is fair and reasonable; and
>
> c. the proposed buyer is proceeding in good faith.

*See In re Med. Software Solutions*, 286 B.R. 431-439-40 (Bankr. D. Utah 2002).

19. The Trustee has met all four parts of this test, and as such, he respectfully requests that the Court grant the relief requested in this Motion by authorizing the proposed sale of the Property.

*Sound Business Purpose*

20. Courts show great deference to a trustee's decisions. *See Summit Land Co. v. Allen* (*In re Summit Land Co.*), 13 B.R. 310, 315 (Bankr. D. Utah 1981). Additionally, a "presumption of reasonableness" attaches to the decisions of those controlling a debtor. *In re John-Mansville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986).

21. The Trustee submits that the proposed sale of the Property pursuant to the above terms and procedures is based on sound business judgment, and the Trustee has made an independent and informed decision based on his knowledge of the Property that the proposed sale terms and procedures are the best way to maximize the Property's value for the benefit of the Debtor's creditors, produce a good faith sale of the Property, and minimize further costs to the bankruptcy estate.

22. Specifically, the proposed sale of the Property pursuant to the terms of the APA represents a fair and reasonable price for the Property based upon MSG's advice, expertise and knowledge of the market conditions, the nature and condition of the Property, and the marketing efforts made by MSG with respect to the Property.

23. Therefore, in his business judgment, the sale of the Property pursuant to the above terms and procedures is in the best interest of the Debtor's estate.

5

### *Notice of the Proposed Sale Is Appropriate*

24. The Trustee also respectfully submits that the second prong of the four-part test has been met in this case because there has been adequate and reasonable notice to interested parties, including full disclosure of the material sale terms and the fact that the Trustee has no relationship with Buyer.

25. Furthermore, the sale of the Property has been appropriately marketed in a fashion typical of property of this nature by MSG.

26. Concurrent with the filing of this Motion, the Trustee served the Notice of Hearing upon (a) all creditors and parties-in-interest; (b) all parties who have requested notice in this case; (c) all parties who have submitted an offer to purchase the Property; (d) the Federal Communications Commission (the "FCC"); and (e) the office of the United States Trustee. The Notice of Hearing provides, among other things, notice of the hearing on this Motion, a description of the Property, and the material terms of the proposed sale.

27. Such procedures are fair and reasonable, and afford notice as required under 11 U.S.C. § 363 and Federal Rules of Bankruptcy Procedure 2002 and 6004.

### *Fair and Reasonable Price*

28. The Trustee believes that the sale of the Property as proposed herein is fair, reasonable and will ensure that the estate obtains the highest and best price for the Property. In his business judgment, the Trustee has received a fair and reasonable offer from the Buyer to purchase the Property for $10,000.00.

### *Good Faith Purchaser*

29. The Property will be sold to a good faith purchaser.

Document    Page 7 of 19

30. Although the Bankruptcy Code does not define "good faith," the Tenth Circuit has determined, in the context of 11 U.S.C. § 363(m), that a "good faith" purchaser is "one that buys in good faith, and for value." *Tompkins v. Frey (In re Bel Air Assocs., Ltd.)*, 706 F.2d 301, 304, (10th Cir. 1983). Actions that destroy a purchaser's good faith include "fraud, collusion between the purchaser and other bidders or trustee, or an attempt to take grossly unfair advantage of other bidders." *Id.* at 305 n. 11 (citation omitted); *see also In re Lotspeich*, 328 B.R. 209 (10th Cir. BAP 2005).

31. Here, the Court has approved the Trustee's employment of MSG and the Broker as a disinterested professional. The Property has been publicly marketed in a fashion typical of property of this nature. The terms of the APA have been negotiated by the Trustee and Buyer through their respective independent attorneys, and the purchase price set forth in the APA represents a fair and reasonable value for the Property. Finally, the APA and its terms are being fully disclosed to the Court and parties in interest.

32. To the best of the Trustee's knowledge, the Buyer is a third-party purchaser who has no connections to the Trustee, the Trustee's professionals, the Office of the United States Trustee or its employees, or the Debtor.

33. Thus, the Trustee submits that the proposed sale is an arm's length transaction, made to a good faith purchaser, that is entitled to protection under 11 U.S.C. § 363(m).

*The Sale of the Property Free and Clear of Interests Is Appropriate*

34. 11 U.S.C. § 363(f) states that a trustee may sell estate property free and clear of interests, if:

    (1)    applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

  (2) such entity consents;

  (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

  (4) such interest is in bona fide dispute; or

  (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

35. Because Section 363(f) is in the disjunctive, the satisfaction of any one of the alternative requirements enumerated therein will warrant the Trustee's proposed sale of the Property free and clear of any and all interests. Thus, although the Trustee is not aware of any party that claims an interest in the Property, to the extent any party does assert an interest in the Property, satisfaction of any of the foregoing statutory requirements will warrant the Trustee's sale of the Property free and clear of those interests. The Trustee reserves all rights to respond to interests, if any, asserted in response to this Motion against the Property, and in so doing, the Trustee reserves any and all claims and defenses that the Trustee, the Debtor, or the estate possess with respect to the Property.

36. The Trustee submits that any interest that may be asserted in conjunction with this Motion or the Property is disputed and/or adequately protected by the proposed sale inasmuch as such interests will attach to the Net Sale Proceeds.

## **CONCLUSION**

WHEREFORE, the Trustee requests that the Court grant this Motion and authorize the sale of the Property, free and clear of all interests pursuant to 11 U.S.C. §§ 363(b) and (f), with any valid interests in the Property attaching to the Net Sale Proceeds. The Trustee also requests that he be authorized to disburse the proceeds of sale to pay the fees and costs related to the sale, including MSG's 5% commission and FCC fees. Furthermore, the Trustee requests that the 14-

day stay imposed by Federal Rule of Bankruptcy Procedure 6004(h) be waived. The Trustee also requests such other and further relief as is just and proper.

DATED this 14th day of March, 2018.

>  */s/ Michael F. Thomson*
> Michael F. Thomson
> Peggy Hunt
> Nathan S. Seim
> John J. Wiest
> DORSEY & WHITNEY LLP
> *Attorneys for Chapter 7 Trustee*

**CERTIFICATE OF SERVICE – BY NOTICE OF ELECTRONIC FILING (CM/ECF)**

I hereby certify that on this 14th day of March, 2018, I electronically filed the foregoing **MOTION TO APPROVE ASSET PURCHASE AGREEMENT (K227CP)** with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case, as identified below, are registered CM/ECF uses and will be served through the CM/ECF system.

- Geoffrey L. Chesnut    gchesnut@expresslaw.com, courtmailrr@expresslaw.com;chesnutgr54003@notify.bestcase.com
- Anna W. Drake    annadrake@att.net, r51122@notify.bestcase.com
- John T. Morgan tr    john.t.morgan@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- Knute A. Rife    KARife@RifeLegal.com
- Michael F. Thomson    thomson.michael@dorsey.com, montoya.michelle@dorsey.com;ventrello.ashley@dorsey.com
- Michael F. Thomson tr    thomson.michael@dorsey.com, UT17@ecfcbis.com;montoya.michelle@dorsey.com
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov

**CERTIFICATE OF SERVICE – MAIL, OTHER**

I hereby certify that on this 14th day of March, 2018, I caused to be served a true and correct copy of the foregoing **MOTION TO APPROVE ASSET PURCHASE AGREEMENT (K227CP)** as follows:

**Mail Service – By regular first class United States Mail, postage fully pre-paid, addressed to:**

Community Translator Network LLC
432 North 3420 West
Hurricane, UT 84737

Greg Merrill
Media Services Group, Inc.
1289 North 1500 East
Logan, UT 84341

Mountain Community Translator, LLC
Attn: Vic Michael
87 Jasper Lake Road
Loveland, CO 80537

4825-3418-2751\1

Federal Communications Commission
445 12th Street, SW
Washington, DC 20554

Marlene Dortch, Secretary
Federal Communications Commission
445 12th Street, SW, RM TW-A325
Washington, DC 20554

Michael Wagner
Federal Communications Commission
445 12th Street, SW, RM TW-A325
Washington, DC 20554

*/ s / Erin Johnson*

11

4825-3418-2751\1

# EXHIBIT 1

ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement") is made and entered into as of the 1st day of ~~February~~ March 2018, and is by and between **Michael Thomson, Trustee, Chapter 7 Bankruptcy Estate** ("Assignor") and **Mountain Community Translator, LLC** ("Assignee" and together with Assignor, collectively, the "Parties").

RECITALS

WHEREAS, on December 1, 2015, Community Translator Network, LLC filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Central District of Utah (the "Bankruptcy Court"), thereby initiating Case No. 15-31245 (the "Bankruptcy Case"); and

WHEREAS, on June 19, 2017, the Bankruptcy Court converted the Bankruptcy Case from one under chapter 11 to that under chapter 7 of the Bankruptcy Code; and

WHEREAS, on June 20, 2017, Assignor was appointed as the Trustee in the Bankruptcy Case; and

WHEREAS, on September 15, 2017, the Federal Communications Commission (the "FCC") granted an involuntary assignment of authorization, BAPFT-20170725ABM, of a Construction Permit for FM Translator Station K227CP (the "Construction Permit"), Cheyenne, WY (Facility No. 143430) (the "Facility") from Community Translator Network, LLC – Debtor-in-Possession to Assignor; and

WHEREAS, Assignor now desires to sell the Facility's assets and assign the Construction Permit for the Facility on the terms and conditions specified herein; and

WHEREAS, Assignee desires to acquire the Construction Permit for the Facility on the terms and conditions specified herein; and

WHEREAS, consent of the FCC for the assignment of authorization of the Construction Permit contemplated hereunder is required prior to consummation thereof.

AGREEMENT

NOW, THEREFORE, IN CONSIDERATION OF THE MUTUAL PROMISES CONTAINED HEREIN, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto, intending to be legally bound, do hereby agree as follows:

1. <u>Assignment of the Construction Permit and sale of other assets of the Facility</u>. Subject to the terms and conditions herein set forth, Assignor agrees to assign and Assignee agrees to purchase and accept the assignment of the Construction Permit for the Facility, as

4844-9651-1578\2

modified pursuant to the Minor Modification Application (defined below) (collectively, the "Assets").

2. Consideration. The Purchase Price for the Assets shall be Ten Thousand Dollars ($10,000) (the "Purchase Price") in cashier's check or wire transfer at Closing. Of this amount, Two Thousand Dollars ($2,000) will be placed in Escrow by Assignee with Assignor, to be held by Assignor in a segregated account within five (5) business days of Assignee signing of this Agreement. This amount shall be considered an Earnest Money Deposit (the "Earnest Money Deposit"), which shall be released to Assignor at Closing and be applied to the Purchase Price at Closing. Should Closing not occur for any reason relating exclusively to Assignor, or upon termination of this Agreement due to Assignor's material breach, the Earnest Money Deposit shall be returned to Assignee. Should Closing not occur for any reason relating exclusively to Assignee, or upon termination of this Agreement due to Assignee's material breach, the Earnest Money Deposit shall be retained by Assignor as liquidated damages pursuant to the terms of Section 16 of this Agreement.

3. FCC Application; Bankruptcy Court Approval.

(a) No later than seven (7) business days after the Bankruptcy Court's entry of the Approval Order (defined below), the Parties shall file an application (FCC Form 345) seeking FCC consent to the assignment of authorization of the Construction Permit from Assignor to Assignee (the "Assignment Application"). The Parties shall each use best efforts to prosecute the Assignment Application diligently and in good faith so that it may be granted by the FCC as soon as practicable, provided, however, that in the event the Assignment Application is designated for hearing, then the party which is not the subject of the hearing (or which is not the party whose alleged actions or omissions resulted in the designation for hearing) may elect to terminate this Agreement upon written notice to the other party.

(b) Assignor shall file a motion seeking the Bankruptcy Court's approval of this Agreement. This Agreement is binding upon the Parties as of the date on which it is executed, but the obligations of the Parties hereunder are subject to and contingent upon entry of a final, non-appealable order of the Bankruptcy Court approving this Agreement (the "Approval Order"). All costs of seeking and obtaining Bankruptcy Court approval shall be paid by Assignor, and the Parties each agree to use their best efforts to secure approval of this Agreement by the Bankruptcy Court.

4. Closing. On the Closing Date, Assignee agrees to pay the Purchase Price, and Assignor shall deliver clear title to the Assets, free of any claims, liabilities, liens or other encumbrances of any nature. The Assets are to be conveyed by Assignor to Assignee through an assignment and any other document of transfer (the "Closing Documents") customary for such purpose and satisfactory in form and substance to Assignor, Assignee, and their respective counsel. Closing will occur within five (5) business days following the date on which the FCC approval of the Assignment Application is granted and becomes a "Final Order." The Parties shall not be obligated to proceed to Closing if (1) the Order includes conditions materially adverse to Assignor or Assignee; or (2) the conditions precedent to Closing have not been

satisfied or waived. For purposes of this Agreement, the term "Final Order" shall mean an order of the FCC which is not reversed, stayed, enjoined or set aside; and as to which no timely request for stay, reconsideration, review, rehearing or notice of appeal or determination to reconsider or review is pending; and provided that the time for filing any such request, petition or notice of appeal or review by the FCC, and for any reconsideration, stay or setting aside by the FCC on its own motion or initiative, has expired. Notwithstanding the foregoing, Assignee may waive the requirement that the grant become a Final Order, in which case closing shall occur following initial grant of the Assignment Application.

5.  Non-Closing. Should the Bankruptcy Court refuse to approve this Agreement, or should the FCC revoke or refuse to approve the Assignment Application, Assignor agrees to refund the Earnest Money Deposit within five (5) business days of such final denial by the Bankruptcy Court or the FCC, as the case may be, and there shall be no further obligation by either party. If Closing has not occurred within twelve (12) months after the date of this Agreement, then either party may terminate this Agreement, provided, however, that the right to terminate this Agreement under this Section 5 shall not be available to any party whose failure to fulfill any obligation under this Agreement shall have been the principal cause of, or shall have resulted in unreasonable delay in Closing. In the event of a termination of this Agreement under this Section 5, the Earnest Money Deposit shall be refunded to Assignee by Assignor.

6.  Representations, Warranties, and Covenants.

(a)  Assignor and Assignee represent that each has had the opportunity to have legal counsel review this Agreement and the action contemplated. The cost of legal representation shall be paid by the party which incurred the expense.

(b)  Each party represents to the other that it has full legal authority and power to enter into this Agreement and to timely perform all of its obligations set forth herein, and that this Agreement constitutes the legal, valid and binding obligation of that party, enforceable in accordance with its terms.

(c)  Assignor covenants that it will use all reasonable efforts to avoid any act that might have a material adverse effect upon the Assets, the Construction Permit, or the transaction contemplated hereby pending Closing.

(d)  Assignor warrants that, after entry of the Approval Order, on the Closing Date Assignor will have good and marketable title to all of the Assets and can assign the Assets free and clear of all claims and liens.

(e)  Assignor warrants that there are no leases or contracts pertaining to the Assets, and between now and the date of Closing, Assignor shall not, without the consent of Assignee or Bankruptcy Court approval, enter into any leases or contracts pertaining to the Assets or dispose of or agree to sell any of the Assets.

(f)     Assignor makes no representations or warranties of any kind as to the condition or sufficiency of the Assets, it being expressly understood and agreed that Assignee is purchasing the Assets "as is where is."

(g)     Assignor and Assignee each warrant that none of the representations or warranties made by it, nor any statement made in any document or certificate furnished by it pursuant to this Agreement contains or will contain at Closing, any untrue statement of a material fact, or omits or will omit at Closing, to state any material fact necessary in order to make the statements contained herein or therein, in the light of the circumstances under which they were made, not misleading.

7.    FCC and Financial Qualifications. Assignee represents warrants and covenants that Assignee is qualified to be an FCC licensee and to hold the Construction Permit which is the subject of this Agreement; and that Assignee is and will be financially qualified to perform all obligations of this Agreement at all relevant times.

8.    Consents. Except for FCC consent and Bankruptcy Court approval, no consent, waiver, authorization or approval from, or filing of any notice or report with, any Governmental Authority or other Person is necessary in connection with the execution, delivery or performance by Assignor of this Agreement or any of the documents or transactions contemplated hereby.

9.    Equipment. Assignor is not conveying any equipment under this Agreement.

10.   Fees. The Parties agree that the legal fees shall be paid by the party which incurred the expense, and further that the Assignment Application fee shall be paid one-half by Assignee and one-half by Assignor (i.e. 50/50).

11.   Control of the Construction Permit. Between the date of this Agreement and the Closing Date, Assignee shall not control the Construction Permit, which shall remain the sole responsibility and under the control of Assignor, subject to Assignor's compliance with this Agreement.

12.   Public Notice. Upon filing the Assignment Application, Assignor shall be responsible for, and shall take the necessary steps, to provide such legal public notice concerning the assignment as is or may be required under the FCC rules and provide Assignee with evidence of compliance with the local public notice requirement.

13.   Assignor's Closing Conditions. All obligations of Assignor to consummate the transactions contemplated by this Agreement are subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions which, except for the initial consent of the FCC to the assignment, may be waived in whole or in part by Assignor:

(a)     the Bankruptcy Court shall have entered the Approval Order;

(b)    the FCC shall have consented to the assignment of the Construction Permit to Assignee without any condition materially adverse to Assignor; and

(c)    Assignee shall have delivered the balance of the Purchase Price in the manner specified in Section 4 hereof.

14.    Assignee's Closing Conditions. All obligations of Assignee to consummate the transactions contemplated by this Agreement are subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions which, except for the initial consent of the FCC to the assignment, may be waived in whole or in part by Assignee:

(a)    the FCC shall have consented to the assignment of the Construction Permit to Assignee without any condition materially adverse to Assignee, and such consent shall have become a Final Order;

(b)    the Bankruptcy Court shall have entered the Approval Order;

(c)    Assignor shall have executed and delivered to Assignee the Closing Documents and conveyed the Assets to Assignee in accordance with this Agreement;

(d)    all representations and warranties of Assignor made herein shall be true and correct in all material respects as of the Closing Date; and

(e)    as of the Closing Date, Assignor shall have complied in all material respects with all covenants and conditions of this Agreement.

15.    Notices. All correspondence or notice required or desired to be given under this Agreement shall be deemed given when delivered to the U.S. Postal Service, pre-paid, First-Class mail, to the address listed below:

To Assignor:   Michael Thomson, Trustee
               Dorsey & Whitney LLP
               111 S. Main Street, Suite 2100
               Salt Lake City, UT  84111-2176
               E-mail: thomson.michael@dorsey.com

To Assignee:   Mountain Community Translators, LLC
               87 Jasper Lake Road
               Loveland, CO  80537
               ATTN:  Vic Michael
               E-mail: vicmichael@aol.com

16.    Liquidated Damages. If any party performs any act or omission that adversely affects the terms of this Agreement resulting in a material breach of this Agreement and termination of this Agreement prior to Closing, actual damages would be difficult to ascertain

and so the Parties agree that the amount of the Earnest Money Deposit ($2,000) is a reasonable approximation of the damage they would suffer were the other party to default.

17.  Specific Performance. In the event of a material breach of this Agreement by Assignor, instead of termination of this Agreement and seeking damages from Assignor, Assignee shall alternatively have the right to seek and obtain specific performance of the terms of this Agreement, it being agreed by Assignor that the Assets are unique assets. If any action is brought by Assignee pursuant to this subsection to enforce this Agreement, Assignor shall waive the defense that there is an adequate remedy at law.

18.  Indemnification. Assignee indemnifies and holds Assignor harmless from any loss, liability, damage or expense (including legal and other expenses incident thereto) arising from or pertaining to (a) ownership or operation of the Assets subsequent to the date of Closing or (b) breach of any covenants, representations or warranties in this Agreement, by Assignee. No claims may be brought under this Agreement unless written notice describing in reasonable detail the nature and basis of such claim is given within a reasonable time after the party seeking indemnification becomes aware of the claim. The indemnifying party shall be entitled at its own expense to compromise or defend against the claim with counsel reasonably satisfactory to the indemnified party; provided, that once the defense thereof is assumed by the indemnifying party, the indemnifying party shall keep the indemnified party advised of all developments in the defense thereof and any related litigation, and the indemnified party shall be entitled at all times to participate in the defense thereof at its own expense.

19.  No Liabilities Assumed. Assignee shall not assume or in any manner be liable for any debts, liens, obligations or liabilities of Assignor, whether express or implied, known or unknown, contingent or absolute.

20.  Allocation of the Purchase Price. Assignor and Assignee shall agree to an allocation of the Purchase Price as reasonably established by Assignee. Assignor and Assignee shall use such allocation for all reporting purposes in connection with federal, state and local income and, to the extent permitted under applicable law, franchise taxes. Assignor and Assignee agree to report such allocation to the Internal Revenue Service in the form required by Treasury Regulation § 1.1060-1T.

21.  Miscellaneous. This Agreement represents the entire agreement of the Parties with respect to the subject matter herein and supersedes any prior agreement whether in writing or otherwise. This Agreement may be amended only in writing by an instrument duly executed by both parties and may be executed in counterparts. This Agreement may be executed in counterparts. This Agreement is to be construed and enforced under the laws of the State of Utah with venue for any action brought to enforce this Agreement in the Bankruptcy Court.

**WHEREFORE**, the Parties whose names and addresses appear below have caused this Agreement to be executed by them as of the date first above written.

MICHAEL THOMSON, TRUSTEE, CHAPTER 7 BANKRUPTCY ESTATE - "ASSIGNOR"

By: _____
    Michael Thomson, Trustee, Chapter 7 Bankruptcy Estate

MOUNTAIN COMMUNITY TRANSLATOR, LLC -"ASSIGNEE"

By: _____
    Victor A. Michael, Jr.
Its: Sole Member